AMERICAN RELIABLE INSURANCE COMPANY, American Bankers Insurance Company of Florida and Campbell Insurance Services, Inc., Plaintiffs/Petitioners,

v.

Robert STILLWELL and Helen Stillwell, Defendants/Respondents.

Civil Action No. 5:01–CV–59.

United States District Court, N.D. West Virginia.

March 18, 2002.

Order Denying Reconsideration July 15, 2002.

Markham R. Leventhal, Stephan I. Voudris, Jorden Burt LLP, Miami, FL, John Preston Bailey, Bailey, Riley, Buch & Harman, L.C. Wheeling, WV, for American Bankers Insurance Co. of Florida.

Kevin S. Burger, Margolis Edelstein, Pittsburgh, PA, for American Reliable Insurance Company, Campbell Unsurance Services.

Thomas C. Schultz, Don A. Yannerella, Wheeling, WV, for Robert Stillwell, Helen Stillwell.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFFS' MOTION TO COMPEL ARBITRATION, DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES OF LITIGATION, DENYING PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS, DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY

STAMP, District Judge.

### I. *Introduction*

Pending before this Court is the motion to dismiss of defendants/respondents, Robert and Helen Stillwell. Also, pending before this Court is the joint motion to compel arbitration of plaintiffs/petitioners, American Reliable Insurance Company ("American Reliable"), American Bankers Insurance Company of Florida ("American Bankers"), and Campbell Insurance Services, Inc. ("Campbell") (collectively "plaintiffs"), as well as several other motions.[1] This Court has now reviewed the motions and memoranda in support thereof and in opposition thereto. For the reasons set in this opinion, this Court finds that defendants' motion to dismiss should be granted, plaintiffs' motion to compel arbitration of defendants' claims should be denied,

---

1. The other motions pending before this Court include a motion by defendants Stillwell to strike plaintiffs' reply memorandum in support of motion to compel arbitration, motion by defendants for attorneys' fees and expenses of litigation, motion by plaintiff Campbell for leave to file instanter, a surreply memorandum of law in opposition to defendants' motion to dismiss, and a motion by plaintiff American Reliable for Rule 11 sanctions.

defendants' motion to strike should be denied, defendants' motion for attorneys' fees and expenses of litigation should be denied, Campbell's motion for leave to file surreply should be granted, and American Reliable's motion for Rule 11 sanctions should be denied.

## II. *Facts*

The defendants purchased an American Reliable mobile home owners policy on or about February 9, 1999, which contained an arbitration clause.[2] On April 9, 1999, the defendants sustained a casualty loss to their property. Defendants claim that the loss was covered by the American Reliable insurance policy, but American Reliable claims that the loss was not covered by the policy. Nevertheless, American Reliable settled the plaintiffs' property damage claim for $9,200.00. The defendants then filed a lawsuit in the Circuit Court of Ohio County, West Virginia on February 29, 2000 claiming that American Reliable and certain purported agents breached the insurance policy agreement, engaged in a series of unfair claims settlement practices, acted in bad faith in settling the defendants' claim, used an unlicensed insurance adjuster, and violated West Virginia insurance law. American Reliable and Campbell filed an answer offering 14 affirmative defenses, none of which referred to their desire to arbitrate the claims in accordance with the arbitration clause. The defendants Stillwell subsequently filed a motion for leave to amend their complaint, which was granted on April 2, 2001. The amended complaint added class action allegations and added American Bankers as a defendant. American Reliable and Campbell filed an answer to the amended complaint, which contained 23 affirmative defenses. The 21st affirmative defense did mention the existence of the arbitration clause.

The plaintiffs participated in the state court proceedings for 14 months prior to filing their joint motion to compel arbitration and to stay judicial proceedings on May 1, 2001.[3] The plaintiffs, along with a co-defendant not named in the action before this Court, filed a joint motion to compel arbitration and to stay judicial proceedings in the state court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*[4] On May 18, 2001, the plaintiffs filed a complaint and petition to compel arbitration in this Court.[5] On June 11,

---

2. The arbitration clause stated:

Any and all disputes, controversies or claims of any kind and nature between you and us arising out of or in any way related to the validity, interpretation, performance or breach of any provisions in this policy, and upon which a settlement has not been reached by you and us, shall be resolved exclusively, by arbitration in accordance with the Federal Arbitration Act. (9 U.S.C. § 1, *ET SEQ.*)

American Reliable Ins. Co. Spec. Mobile Homeowners Policy at 9.

3. American Reliable as well as a co-defendant not named in the action before this Court filed a crossclaim against another co-defendant not named in the action before this Court in May 2000. The plaintiffs have also answered discovery, entered into agreements concerning discovery, attended hearings, and have been ordered to produce documents that were withheld from discovery. The state court also entered an order preserving evidence in possession of Campbell and an agreed scheduling order endorsed by American Reliable and Campbell.

4. Section 3 of the FAA provides for a stay of the proceedings when issues in the proceedings are referable to arbitration and Section 4 allows a party to petition for an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement in that civil action.

5. It should be noted that the plaintiffs could not remove the state court case to this Court because one of the named defendants in the state court action was a resident of West Virginia and therefore complete diversity was not present.

2001, the state court entered an order denying plaintiffs' motion to compel arbitration and stay judicial proceedings based upon the fact that the state court found the insurance contract to be a contract of adhesion and that there was no evidence that the parties to the contract knowingly bargained for an arbitration clause. On June 13, 2001, after the state court entered its order denying the motion to compel arbitration, a summons was issued and returned executed to this Court as to the defendants. On June 22, 2001, the plaintiffs filed a joint motion to compel arbitration and memorandum in support in this Court. In their memorandum in support of their motion to compel arbitration, the plaintiffs state:

> On June 11, 2001, the state court issued an erroneous ruling which failed to follow Federal law under the FAA and which denied the motion to compel arbitration on the ground that the arbitration clause had not been separately "bargained for." ... The state court's decision denying arbitration is directly contrary to binding United States Supreme Court authority under the FAA, which firmly holds that a court may not discriminate against an arbitration clause by enforcing all other provisions of a contract but not its arbitration clause. *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Accordingly, the Petitioners hereby move this Court to enforce Federal law under the FAA and to enter an Order compelling the parties' dispute to arbitration.

Mem. in Supp. of Mot. to Compel Arbitration at 4. On June 29, 2001, the defendants filed a motion to dismiss and memorandum in support based upon (1) the *Rooker–Feldman* doctrine; (2) the *Younger* abstention doctrine; (3) the "wise judicial administration" doctrine; (4) res judicata and/or collateral estoppel; (5) lack of jurisdiction over the subject matter of this action; (6) that the relief sought by the plaintiffs cannot be granted because arbitration cannot be compelled against the policyholders; and (7) the Full Faith and Credit Act, 28 U.S.C. § 1738.

### III. *Discussion*

#### A. *Subject Matter Jurisdiction*

The defendants make several arguments in their motion to dismiss, two of which focus on their contention that this Court lacks subject matter jurisdiction over this action. "The FAA does not create independent federal question jurisdiction under 28 U.S.C. § 1331. A federal district court has jurisdiction over a petition filed under the FAA only when the plaintiffs establish an independent basis of jurisdiction, such as diversity of citizenship." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser,* 181 F.Supp.2d 914, 919 (N.D.Ill.2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Although defendants argue that this Court does not have jurisdiction over this matter pursuant to 28 U.S.C. § 1332, this Court finds that complete diversity does exist and the amount in controversy exceeds $75,000.00.

 Defendants also contend that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine provides that "'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 198 (4th Cir.2000) (quoting *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The *Rooker–Feldman* doctrine also bars consideration of any claim that is "inextricably intertwined" with the state court decision. *See id.* This means that a federal district court

cannot consider a claim that, although not actually decided by the state court, requires the federal court to determine that the state court wrongly decided the issues before it. *See id.* (citing *Plyler v. Moore,* 129 F.3d 728, 731 (4th Cir.1997)). The *Rooker–Feldman* doctrine also applies to interlocutory orders issued by state courts. *See id.* at 199. The basic principle of the doctrine is that " '[a] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.' " *Id.* at 198 (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)).

■ The defendants argue that the plaintiffs' federal complaint is an impermissible collateral attack on a state court decision. The plaintiffs argue in response that this case is a separate parallel petition under the FAA, which has been expressly approved by federal courts and is not the type of federal appeal of a state court action to which the *Rooker–Feldman* doctrine applies. Plaintiffs contend that because they filed their federal court petition before the state court ruled on the merits of their motion to compel arbitration, the federal petition cannot be characterized as an appeal, and therefore, the *Rooker–Feldman* doctrine does not apply.

The plaintiffs rely on the case of *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126 (2d Cir.1997), to stand for the proposition that the *Rooker–Feldman* doctrine is inapplicable in a case where the federal court petition to compel arbitration was filed prior to the state court denying a motion to compel arbitration. However, the facts in *Distajo* differ greatly from the facts of the case at hand.

In *Distajo,* several franchisees brought suit in the state courts in Illinois, Pennsyl-vania, Massachusetts and North Carolina against Doctor's Associates, Inc. ("DAI") alleging fraud, various breaches of the franchise agreement, and seeking a declaration that the arbitration clause in the franchise agreement was unenforceable. *See id.* at 128. DAI did not file a motion to compel arbitration in state court, but instead filed a motion to compel in federal court as well as a written demand for arbitration with the American Arbitration Association. *See id.* In one of the cases, the franchisees moved for and obtained default judgment against DAI because DAI did not appear in the state court action. *See id.* at 137. After default judgment was obtained, the federal court granted DAI's petition to compel arbitration of those franchisees' claims and entered a preliminary injunction enjoining the franchisees from further prosecuting their state court suit. *See id.* The Second Circuit reversed the district court's order and vacated the preliminary injunction/temporary restraining order ("TRO"). *See id.* The district court then entered a TRO enjoining the franchisees from prosecuting their state suit. *See id.* However, the franchisees did not advise the state court of the TRO. *See id.* The state court, upon being advised of the Second Circuit's decision lifting the injunction, awarded the franchisees $400,000.00 in damages. *See id.* The franchisees then argued that the state court judgment stripped the district court of subject matter jurisdiction to entertain DAI's petition to compel arbitration. *See id.* On appeal, the Second Circuit held that "DAI filed its petitions to compel arbitration of the franchisees' state actions *before* the state courts had made any rulings on the merits in those actions." *Id.* at 138 (citations omitted). On these facts, the Second Circuit found that the district court did not lack jurisdiction under *Rooker–Feldman* to adjudicate DAI's petitions to compel arbitration. *See id.*

Another case relied on by the plaintiffs is *Central Reserve Life Ins. Co. v. Marello,* No. Civ. A. 00–3344, 2001 WL 41129 (E.D.Pa. Jan.17, 2001). In *Marello,* Marello filed a complaint in state court against her health insurance company, Central Reserve Life Insurance Company, on June 6, 2000. *See id.* at *1. Central Reserve promptly filed its federal complaint and motion to compel arbitration on June 30, 2000. *See id.* It also filed preliminary objections to Marello's state court complaint on July 5, 2000, raising, in part, the arbitrability of Marello's claim under the FAA. *See id.* The state court overruled Central Reserve's preliminary objections on September 20, 2000 and the federal court subsequently granted Central Reserve's motion to compel on October 4, 2000. *See id.* The court found that "[a]t the time it was filed, Central Reserve's Motion to Compel Arbitration was neither a direct appeal from an adverse state ruling, nor the functional equivalent thereof." *Id.* at *4. Accordingly, the court found that the *Rooker–Feldman* doctrine was not implicated because there was no ruling on the merits from which to appeal. *See id.*

These cases can be distinguished from the case currently pending before this Court. In this case, although the plaintiffs may have filed a complaint and petition to compel arbitration in this Court before the state court entered its order denying their state court motion to compel arbitration, they did not file a memorandum in support of their motion to compel with this Court until after the state court ruling. Also, the plaintiffs' memorandum in support of their motion to compel arbitration contends that the state court issued an erroneous ruling, which failed to follow federal law under the FAA. Further, a summons on the complaint was not returned executed as to the defendants until June 13, 2001, which was after the state court ruling.

[6] This Court finds that this particular factual situation renders the plaintiffs' motion to compel arbitration a "functional equivalent" of an appeal from the June 11, 2001 state court decision. This is not a case where the plaintiffs, from the beginning, asked this Court to compel arbitration, but rather one in which the plaintiffs attempted to shop between two forums in order to gain a strategic advantage. Although this Court recognizes that it is proper for a party to file a motion in federal court seeking an order compelling arbitration under the FAA while the underlying state court proceeding remains pending, it is not proper for a party to file two of the same motions in both state court and federal court and to then wait until after the state court renders an unfavorable ruling before the party pursues its motion in federal court. Plaintiffs were clearly looking for the proverbial "two bites of the apple" by filing a motion to compel arbitration in both the state and federal court. Not only do the plaintiffs practically contend in their memorandum in support of their motion to compel that they are appealing the state court order, but their failure to actively pursue their complaint and petition to compel arbitration until after the state court ruling clearly demonstrates that this is a functional equivalent of an appeal of a state court order. Accordingly, this Court finds that the *Rooker–Feldman* doctrine applies and that this Court lacks subject matter jurisdiction to decide this case.

## B. *Waiver*

[7–9] However, even if this Court were to find that it did have subject matter jurisdiction, this Court finds that the plaintiffs have waived their right to insist on arbitration. "Under the Federal Arbitration Act, a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the

subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *MicroStrategy Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001) (quoting *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir.1985)); *see also* 9 U.S.C. § 3. Although "default is akin to waiver," any doubts as to whether the party has waived its right to compel arbitration, must be resolved in favor of arbitration. *Id.* The Fourth Circuit has held:

> A party may waive its right to insist on arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." ... But even in cases where the party seeking arbitration has invoked the "litigation machinery" to some degree "[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*".

*Id.* at 249 (citations omitted). "The party opposing arbitration 'bears the heavy burden of proving waiver.'" *Id.* at 250 (quoting *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996)).

A court may consider the delay in seeking arbitration when determining whether a waiver occurred. *See id.* at 250. There is no doubt that the plaintiffs delayed in seeking arbitration for over a year after the complaint was filed. The contention that the claim may be arbitrable was never raised until the plaintiffs filed their answer and affirmative defenses to the amended complaint and their motion to compel arbitration in state court approximately 14 months after the proceedings began and then filed their motion to compel in this Court 18 days after they filed their state court motion to compel.

However, this Court is aware that "mere delay, without more, will not suffice to constitute a waiver." *Maxum Founds.,*

*Inc.,* 779 F.2d at 982. This Court must also look at whether the plaintiffs waived their right to insist on arbitration by virtue of their litigation activities in the state court. *See MicroStrategy, Inc.,* 268 F.3d at 250. This requires the Court to look at whether the plaintiffs' litigation in state court centered around the defendants' arbitrable claims. *See id.* at 251. This Court finds that the litigation in the state court did, in fact, center around the claims that the plaintiffs now contend are arbitrable. Accordingly, the plaintiffs' litigation activities in the state court can be used in support of the argument that the plaintiffs have waived their right to insist on arbitration.

In determining whether a party waived its right to seek arbitration, this Court must also examine whether the party objecting to arbitration has suffered actual prejudice. "[P]rejudice ... refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Distajo,* 107 F.3d at 134. This Court finds that the defendants have suffered actual prejudice for several reasons. First, even though they were aware of their right to arbitrate, the plaintiffs proceeded to litigate the state court case for a period of 14 months before they even mentioned that they wished to enforce the arbitration provision in the contract. Second, not only did the plaintiffs delay in seeking to compel arbitration, but their litigation in state court centered around the defendants' arbitrable claims. Third, significant discovery has already taken place in the state court. Fourth, the state court denied plaintiffs' motion to compel arbitration before plaintiffs actively pursued their motion to compel arbitration in this Court. The plaintiffs submitted their motion to compel to one forum and then when they

were disappointed with the result in that forum, actively pursued a motion to compel in the other forum. The plaintiffs' willing participation in the litigation in the state court forum was inconsistent with a desire to arbitrate. Accordingly, this Court finds that the defendants have suffered the type of prejudice that supports a finding of waiver. Although the defendants bear a heavy burden of proving waiver and each factor, considered separately, does not support waiver, taken together, these factors demonstrate that the plaintiffs have waived their right to insist on arbitration.

Even if this Court were to conclude that it had subject matter jurisdiction, and even if this Court were to find that the plaintiffs did not waive their right to insist on arbitration, this Court finds that it should abstain from deciding the plaintiffs' motion to compel arbitration. However, before moving on to the abstention analysis, this Court notes that it agrees with the plaintiffs' argument that any finding of waiver should not apply to American Bankers because American Bankers was not added to the case until the plaintiffs amended their complaint on April 2, 2001. American Bankers delayed only a month in asserting arbitration rights. However, because this Court finds that it does not have subject matter jurisdiction over this matter and because this Court finds that it must abstain from ruling on the motion to compel, the fact that American Bankers did not waive its arbitration rights has no effect on this Court's ultimate decision to dismiss the case.

### C. Abstention

In their motion to dismiss, defendants argue that this Court should dismiss this action based on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the "wise judicial administration" doctrine enunciated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court addressed the question of whether a federal district court may abstain from hearing a motion to compel arbitration out of deference to the parallel litigation brought in state court. *See id.* 103 S.Ct. at 935. The Court found that *Colorado River* provided persuasive guidance in deciding the question before it. *See id.* The Court in *Colorado River* held that in certain "exceptional" circumstances, a federal court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based upon "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (citations omitted).

The *Moses* Court identified the four factors in *Colorado River* as well as two additional factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of a state court. These factors are: (1) whether either court has assumed jurisdiction over any res or property; (2) whether the federal forum is any less convenient to the parties than the state forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law provides the rule of decision on the merits; and (6) the adequacy of the state court proceedings to protect the federal plaintiff's rights. The Court stated that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the im-

portant factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927.

The first and second factors do not weigh in favor of abstention because the state court did not assume jurisdiction over any res or property and the federal forum is located in the same county and city as the state forum.

The third factor, the avoidance of piecemeal litigation, generally is not an issue in situations where there is a state court proceeding and a parallel federal court proceeding seeking to compel arbitration. *See Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927 (stating that the federal arbitrability issue is easily severable from the merits of the underlying state court action). Also *Colorado River* stated that "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River,* 424 U.S. at 816, 96 S.Ct. 1236. However, in this case, the fact that there is a "potential" for conflict, is not the only reason this Court chooses to abstain from exercising jurisdiction. "In analyzing whether a dismissal or stay will further the interest in avoiding piecemeal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985) (citation omitted). In this case, the state litigation *has* disposed of all claims presented in this Court. Not only has the state court already decided the issue before this Court, but the plaintiffs willingly submitted the issue to the state court for a decision. Because the state court already adjudicated the issues involved in this case, there is much to be gained in judicial economy by abstaining from exercising jurisdiction.

With regard to the fourth factor, the state court obtained jurisdiction of the action more than 14 months before the plaintiffs filed their petition and motion to compel arbitration with this Court. This Court must not only look at which complaint was filed first, but how much progress has been made in the two actions. *See Moses H. Cone,* 460 U.S. at 22, 103 S.Ct. 927. This Court has already discussed the fact that there has been substantial proceedings in the state court. Further, the fact that the state court has already decided the motion to compel arbitration demonstrates that the state court proceedings have progressed well ahead of the proceedings in this Court. Accordingly, the fourth factor weighs in favor of abstention.

This Court finds that the fifth factor enunciated in *Moses,* whether state or federal law provides the rule of decision, weighs in favor of abstention. Although "[f]ederal law governs the construction of contract language concerning arbitrability," *see Smith Barney, Inc. v. Critical Health Sys. of N.C., Inc.,* 212 F.3d 858, 860 (4th Cir.2000), state law governs a court's determination of whether a valid agreement to arbitrate arose between the parties. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Johnson v. Circuit City Stores,* 148 F.3d 373, 377 (4th Cir.1998) (citations omitted) ("Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract.... In so deciding, the court should apply 'ordinary state-law principles that govern the formation of contracts.'"). Thus, federal common law is relevant only to provide the basic principle that federal policy favors arbitration and ambiguities are to be interpreted in favor of arbitration. West Virginia law determines the question of the validity, revocability, or the enforceability

of the agreement to arbitrate. Because the defendants are challenging the validity of the arbitration clause, West Virginia law becomes just as important as federal law in determining whether to compel arbitration. Further, the source of law factor is less significant where the state and federal courts have concurrent jurisdiction. *Moses H. Cone*, 460 U.S. at 25, 103 S.Ct. 927.

It is difficult for this Court to evaluate the last factor, which is whether the state court proceeding will be adequate to protect the plaintiffs' rights, because the state court has already ruled on the motion to compel arbitration. The state court order demonstrates that the court considered the plaintiffs' motion to compel arbitration and to stay the proceeding in accordance with the FAA. Although the Supreme Court has never decided whether state courts are obligated to apply 9 U.S.C. § 4, the Supreme Court has stated that "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the Arbitration Act." *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. 927. However, plaintiffs never argue that the state court did not have the jurisdiction to decide their motion to compel arbitration; they assert instead that the state court was wrong. This Court rejects the notion that federal courts have any superior abilities over their state court counterparts and has no reason to believe that Judge Wilson did not decide the plaintiffs' motion to compel arbitration and to stay in accordance with applicable federal and state law.[6]

This Court finds that the balance of these factors demonstrates "exceptional circumstances" which weigh in favor of abstention. This action was not filed until more than 14 months after the state court case was filed, the defendants are challenging the validity of the arbitration clause, which implicates state law, the state court forum is adequate to protect the federal plaintiffs' rights, and the state court has already ruled on the issue before this Court. To retain jurisdiction over the plaintiffs' petition to compel arbitration, while a state court has already ruled on the same motion, would not constitute "wise judicial administration." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236.

### D. *The Other Motions*

Because this Court finds that defendants' motion to dismiss should be granted, plaintiffs' motion to compel arbitration should, accordingly, be denied.

This Court also finds that defendants' motion for an award of attorneys' fees and expenses of litigation should be denied because this Court does not believe that statutory or common law permits this Court to award attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d).

This Court further finds that American Reliable's motion for sanctions pursuant to Federal Rule of Civil Procedure 11 should be denied because the defendants' motion for attorneys' fees was not filed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation. Although this Court does not agree with the defendants' argument that attorneys' fees

---

**6.** This Court does not decide whether it agrees with the state court ruling, but whether this Court agrees is irrelevant because it cannot act as an appellate court to the West Virginia court. On September 28, 2001, the state court entered an order stating that "the order denying arbitration entered on June 11, 2001, is appealable by writ of prohibition or by direct appeal under W.Va.Code § 58–5–

1...." Defs.' Ex. 1 to Supp.Memo. in Support of Mot. to Dismiss. Therefore, if the plaintiffs believe that the state court made an erroneous ruling, they may file an appeal with the West Virginia Supreme Court of Appeals. Further, even though the West Virginia Supreme Court's decision to hear an appeal is discretionary, it is not a reason for this Court to act as an alternative appellate court.

should be granted, this Court does not find that the defendants' argument was frivolous.

This Court further finds that defendants' motion to strike plaintiffs' reply memorandum in support of motion to compel arbitration should be denied because the plaintiffs' reply was timely filed.

Lastly, there being no objection to plaintiffs' motion for leave to file instanter a surreply memorandum in opposition to defendants' motion to dismiss, the plaintiffs' motion should be granted.

### IV. *Conclusion*

For the reasons set forth above, the defendants' motion to dismiss is hereby GRANTED. This Court further finds that plaintiffs' motion to compel arbitration is DENIED; defendants' motion for attorneys' fees and expenses of litigation is DENIED; plaintiffs' motion for Rule 11 sanctions is DENIED; defendants' motion to strike is DENIED; and plaintiffs' motion for leave to file a surreply is GRANTED. It is further ORDERED that this action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

### *MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER AND CERTIFY QUESTION OF LAW TO THE WEST VIRGINIA SUPREME COURT OF APPEALS*

On March 21, 2002, defendants, Robert and Helen Stillwell, filed a motion to reconsider and certify a question of law to the West Virginia Supreme Court of Appeals. Plaintiff, American Reliable Insurance Company, filed a brief in response to defendants' motion to reconsider on April 3, 2002, and defendants filed a reply memorandum on April 4, 2002.

This Court will treat defendants' motion to reconsider as a motion to alter or amend under Federal Rule of Civil Procedure 59(e). The Fourth Circuit has recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). "Rule 59(e) motions may not be used … to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* A Rule 59(e) motion may not be used to relitigate old matters and is an extraordinary remedy that should be used sparingly. *See id.* It is improper to use such a motion "to ask the court to rethink what the court has already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

On March 18, 2002, this Court entered an order granting defendants' motion to dismiss and denying plaintiffs' motion to compel arbitration. This Court based its ruling on lack of subject matter jurisdiction and alternatively waiver and abstention. This Court also denied defendants' motion for an award of attorney's fees and expenses of litigation because the Court did not believe that statutory or common law permitted the Court to award attorney's fees pursuant to Federal Rule of Civil Procedure 54(d).

The defendants now ask this Court to reconsider their motion for an award of

attorney's fees and expenses and that reconsideration of the motion be stayed pending an answer to a question of law that defendants request this Court to certify to the West Virginia Supreme Court of Appeals.

West Virginia has enacted the Uniform Certification of Questions of Law Act, W.Va.Code § 51–1A–1 *et al.* West Virginia Code § 51–1A–3 provides:

> The Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States . . . if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision, or statute of this state.

W.Va.Code § 51–1A–3. The West Virginia Supreme Court of Appeals has recognized that the provisions of the Uniform Certification of Questions of Law Act are not mandatory. *See Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666, 668 (1979). Thus, certification is discretionary both for the certifying court and for the court requested to answer the certified question. The Supreme Court of Appeals has stated that "[i]t is rather apparent that where our State's substantive law is clear, there is no need to obtain certification under West Virginia Code, 51–1A–1, *et seq.*" *See id.* 253 S.E.2d at 669.

Defendants propose the following question for certification:

> Under West Virginia law, when an insurer initiates litigation against his policyholder to compel arbitration, does the policyholder have the right to recover attorney's fees and expenses of litigation from the insurer when the policyholder prevails in such litigation?

The defendants argue that the Supreme Court of Appeals has consistently mandated payment of fees and expenses to policyholders who have prevailed in litigation against their insurers so that the policyholders will not have to suffer the hardship of attorney's fees and expenses incurred as a result of litigation with their insurer. These cases include *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986), and *Aetna Cas. & Surety v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986). In *Hayseeds,* the court recognized that the American rule is that "both sides of a civil controversy must pay their own attorney's fees—win, lose or draw." *Hayseeds, Inc.,* 352 S.E.2d at 78 (citing *Alyeska Pipeline Service, Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The Court went on to say that "in the absence of a statutory or contractual provision providing for such recovery, attorney's fees may not be recovered in an action on an insurance policy." *Id.* However, the court carved out an exception and held that "whenever a policyholder must sue his own insurance company over any property damage claim, and the policyholder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorney's fees." *See id.* at 80. *Pitrolo* also carved out an exception to the American rule and held that "[w]here a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation." *Pitrolo,* 342 S.E.2d at 157, syl. pt. 2.

Defendants are not seeking a clarification of an ambiguity or attempting to fill a void in West Virginia law. Defendants are instead seeking to *expand* the Supreme Court of Appeal's exceptions to the American rule. This Court finds that West Virginia law is quite clear: The American rule that both sides of a civil controversy must pay their own attorney's

fees remains the law in the absence of a statutory or contractual provision providing for recovery of attorney's fees or case law that carves out an exception. Because there is no statutory or contractual provision or case law that carves out an exception, the American rule must apply.

Further, there is no provision in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, that awards attorney's fees to a party who is successful in pursuing a motion to compel arbitration or in defeating a motion to compel arbitration. The FAA was enacted to rigorously enforce private written arbitration agreements. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "The 'liberal federal policy favoring arbitration agreements,' . . . manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual agreements: the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' " *Id.* at 625, 105 S.Ct. 3346 (citations omitted). "Motions to compel arbitration under an arbitration clause should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Zandford v. Prudential–Bache Securities, Inc.*, 112 F.3d 723, 727 (4th Cir.1997) (citations omitted). Thus, awarding attorney's fees to a party who defeats a motion to compel arbitration under the FAA would frustrate Congress' intention to "rigorously enforce" arbitration agreements.

Defendants' motion to reconsider is DENIED because they have not presented this Court with any newly discovered evidence and have not revealed any manifest errors of law. Further, defendants' request to certify their attorney's fees ques-

tion to the West Virginia Supreme Court of Appeals is DENIED because West Virginia substantive law is clear and there is no need to obtain certification.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein.